UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL J. COMARDELLE** | **CIVIL ACTION** |
| **VERSUS** | **No. 13-6555** |
| **PENNSYLVANIA GENERAL INSURANCE COMPANY ET AL.** | **SECTION I** |

### ORDER AND REASONS

Before the Court is a motion[1] filed by plaintiff to remand the above-captioned matter to the Civil District Court for the Parish of Orleans. Defendant, CBS Corporation ("Westinghouse"), filed an opposition,[2] to which plaintiff filed a reply.[3] Additionally, defendants Foster Wheeler, LLC ("Foster Wheeler") and General Electric Company ("GE") joined in Westinghouse's opposition.[4] For the following reasons, the motion is **DENIED**.

### BACKGROUND

Plaintiff alleges that he was "exposed to asbestos and asbestos-containing products manufactured, distributed, and sold" by defendants during the course of his employment from 1963 through 1979, including at the "Avondale Shipyard."[5] Plaintiff alleges, "As a result of these exposures to toxic substances, including asbestos, [he] contracted cancer, mesothelioma, and lung cancer, which was first diagnosed on approximately September 25, 2013."[6] On September 30, 2013, plaintiff initiated the above-captioned litigation in the Civil District Court for the Parish of Orleans against Westinghouse, Foster Wheeler, GE, and more than a dozen other

---

[1] R. Doc. No. 26.
[2] R. Doc. No. 37.
[3] R. Doc. No. 41.
[4] R. Doc. No. 38.
[5] R. Doc. No. 1-2, ¶ 6.
[6] R. Doc. No. 1-2, ¶ 9.

defendants.[7] The claims against Westinghouse, Foster Wheeler, and GE consist primarily of design defects, failure to warn, and fraud.[8]

"On November 4, 2013, Plaintiff was deposed and testified that he worked on all Navy destroyer escorts built at Avondale."[9] On December 3, 2013, Westinghouse filed a notice of removal pursuant to 28 U.S.C. § 1442(a)(1), the Federal Officer Removal Statute.[10] The notice of removal states: "Between 1967 and 1973, a number of Navy destroyer escorts were constructed at Avondale, including the *U.S.S. Connole* (DE 1056). Upon information and belief, at least some of these Navy vessels were outfitted with asbestos-containing or asbestos-insulated turbines which were manufactured and supplied to the Navy by Westinghouse."[11] Westinghouse intends to assert a government contractor defense.[12]

Also on December 3, 2013, Foster Wheeler and GE joined in Westinghouse's notice of removal.[13] Those notices state, "If [Foster Wheeler/GE]'s equipment was indeed on the Destroyer Escorts, [Foster Wheeler/GE] manufactured equipment for use by the U.S. Navy pursuant to contracts and specifications executed by the U.S. Navy."[14] Both companies assert that they are also entitled to removal pursuant to § 1442 and that they are also immune to liability pursuant to a government contractor defense.[15]

---

[7] R. Doc. No. 1-2.
[8] R. Doc. No. 1-2, ¶¶ 24-25, 33, 39-40, 45, 48-49, 65.
[9] R. Doc. No. 1, at 2. Westinghouse attached to its notice of removal a one page excerpt of plaintiff's deposition wherein he testifies that he "worked on the -- on the -- all of the destroyer escorts they built there [at Avondale]." R. Doc. No. 1-3, at 2.
[10] R. Doc. No. 1, at 1-2.
[11] R. Doc. No. 1, at 2.
[12] R. Doc. No. 1, at 9.
[13] R. Doc. Nos. 6, 7.
[14] R. Doc. No. 6, at 2; R. Doc. No. 7, at 2.
[15] R. Doc. No. 6, at 2-3; R. Doc. No. 7, at 2-3.

**STANDARD OF LAW**

The defendant has the burden to establish the existence of federal jurisdiction. *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397 (5th Cir. 1998). Westinghouse, Foster Wheeler, and GE assert that removal is proper pursuant to 28 U.S.C. § 1442, the federal officer removal statute. Section 1442 provides that a civil action commenced in a state court against any agency or officer of the United States or any person acting under that officer may be removed to federal court. 28 U.S.C. § 1442. A defendant may remove a case pursuant to § 1442 if: (1) the defendant is a "person," (2) the defendant acted under the direction of a federal officer, and (3) the defendant raises a colorable federal defense. *Winters*, 149 F.3d at 397; *see also Williams v. Todd Shipyards Corp.*, No. 97-20442, 1998 WL 526612, at *2 (5th Cir. July 21, 1998).

Regarding the first prong, corporations are considered "persons" for purposes of removal under § 1442. *Winters*, 149 F.3d at 398.

In order to satisfy the second prong, a defendant must have "acted pursuant to a federal officer's directions and a causal nexus [must] exist[] between the defendants' actions under color of federal office and the plaintiff's claims." *Winters*, 149 F.3d at 398 (citing *Willingham v. Morgan*, 395 U.S. 402, 409 (1969)). "That nexus is established by the federal officer's direct and detailed control over the defendant. If a corporation only establishes that the acts occurred under the general auspices of federal direction, however, then it is not entitled to § 1442(a)(1) removal." *Green v. Aetna U.S. Healthcare, Inc.*, No. 00-1292, 2000 WL 1229226, at *1 (N.D. Cal. Aug. 18, 2000) (citations omitted). "[T]he [U.S. Supreme] Court has clarified that the right to removal is not unbounded, and only arises when 'a federal interest in the matter' exists." *Winters*, 149 F.3d at 398.

3

In order to satisfy the third prong, a defendant "need not prove the asserted defense, but need only articulate its 'colorable' applicability to the plaintiff's claims." *Id.* at 400. "The officer need not win his case before he can have it removed." *Willingham*, 395 U.S. at 407.

## DISCUSSION

### A. Definition of Person

The first prong of the federal officer removal test requires that the defendant be a "person." Plaintiff could not reasonably dispute that Westinghouse is a "person" for the purposes of § 1442, as it is a corporation. *See Winters*, 149 F.3d at 398.

### B. Acting Under Direction of an Officer

The second prong requires that Westinghouse show that it "acted pursuant to a federal officer's directions" and that "a causal nexus exists between the defendants' actions under color of federal office and the plaintiff's claims."[16] *Winters*, 149 F.3d at 398. The Fifth Circuit has "noted the Supreme Court's admonishment that the statute's 'color of federal office' requirement is neither 'limited' nor 'narrow,' but should be afforded a broad reading so as not to frustrate the statute's underlying rationale." *Id.* (quoting *Murray v. Murray*, 621 F.2d 103, 107 (5th Cir. 1980)).

Plaintiff's briefing focuses primarily on his failure-to-warn claims. However, the Court need not address whether such claims meet this prong, which is a troubling question for federal

---

[16] The Court notes that the two showings under the second prong have been separated by some Courts into distinct prongs, for a total of four factors. *See, e.g.*, *Najolia v. Northrop Grumman Ship Sys., Inc.*, 883 F. Supp. 2d 646, 652 (E.D. La. 2012) (Barbier, J.) (citing *Crocker v. Borden, Inc.*, 852 F. Supp. 1322, 1325 (E.D. La. 1994) (Livaudais, J.)). Although the Court follows the three-pronged framework of *Winters*, the difference is solely one of organization, as the same showing is required under either approach.

4

district courts;[17] as long as removal is proper as to one claim, the entire case is removable pursuant to § 1442.[18] *Najolia v. Northrop Grumman Ship Sys., Inc.*, 883 F. Supp. 2d 646, 656 (E.D. La. 2012) (Barbier, J.) ("[E]ven if the failure-to-warn claim does not provide independent grounds for removal, the action is removable for the independent reason that, as the Court has already stated, the 'acting under' prong is satisfied as to the design-defect claim."); *see Mesa v. California*, 489 U.S. 121, 129 (1989); *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1428 (11th Cir. 1996); *Murphy v. Kodz*, 351 F.2d 163, 166 (9th Cir. 1965). For the following reasons and for the purpose of deciding the motion to remand, it is clear that Westinghouse has made a sufficient showing that it acted pursuant to the directions of the U.S. Navy with respect to the design and manufacture of its turbines.[19] Accordingly, Westinghouse has satisfied the "acting under" requirement with respect to plaintiff's design-defect claims.

The U.S. Supreme Court has commented: "The assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks. . . . Moreover, at least arguably, [contractors] perform[] a job that, in the absence of a contract with a private firm, the Government itself would have had to perform."

---

[17] "[E]ven when courts are presented with . . . substantially the same record and legal arguments, they have come to opposite conclusions." *Leite v. Crane Co.*, No. 11-636, 2012 WL 1982535, at *4 (D. Haw. May 31, 2012). In cases involving the same affidavits as the one at issue in this case, courts have reached opposite conclusions. *See id.* at *3-4 (collecting cases).

[18] Plaintiff also argues that Westinghouse cannot remove the case "[b]ecause Avondale did both government and private work, [and] Westinghouse was supplying equipment for both types of vessels." R. Doc. No. 26-1, at 11. According to plaintiff, this means that Westinghouse cannot "obtain a 'complete defense' at trial," and, therefore, removal is improper. R. Doc. No. 26-1, at 11. However, because removal need only be proper as to one claim asserted against a federal officer, the possibility that Westinghouse may have a complete defense *as to plaintiff's exposures related to his work on Navy destroyers* is sufficient to support removal, even if Westinghouse does not have a defense to plaintiff's other exposures. *See Morgan v. Bill Vann Co.*, No. 11-535, 2011 WL 6056083, at *7 n.8 (S.D. Ala. Dec. 6, 2011); *Epperson v. Northrop Grumman Sys. Corp.*, No. 05-2953, 2006 WL 90070, at *3 (E.D. Va. Jan. 11, 2006).

[19] *See, e.g.*, R. Doc. Nos. 1-5, 1-6.

*Watson v. Philip Morris Cos.*, 551 U.S. 142, 153-54 (2007). "In the context of *Winters*, for example, Dow Chemical fulfilled the terms of a contractual agreement by providing the Government with a product [Agent Orange] that it used to help conduct a war." *Id.* at 153-54.

A recent example from another section of this Court is *Najolia*.[20] In *Najolia*, the plaintiff brought failure-to-warn and design-defect claims against Westinghouse and GE (among others) "alleging that he contracted malignant pleural mesothelioma due to exposure to asbestos" in the course of his duties as a machinist mate aboard a Navy destroyer. *Id.* at 648. GE and Westinghouse removed the case pursuant to § 1442 on the basis of their government contractor defense. *Id.* at 648-49. In discussing the "acting under" requirement with respect to the design-defect claim, the Court considered the affidavits of James Gate, a former Westinghouse employee, U.S. Navy Rear Admiral Roger B. Horne, and David Hobson, a former GE employee. *Id.* at 653-54. The court concluded that Westinghouse and GE "carr[ied] their burden by submitting evidence that general Navy specifications required contractors in their position to manufacture asbestos-containing ship equipment, failing which the Navy would have rejected the turbines." *Id.* at 654.

It is clear from Westinghouse's exhibits that it was subject to the direct and detailed control with respect to the manufacture of its turbines. The affidavit of James M. Gate,[21] which appears to be identical to the affidavit considered by the court in *Najolia*,[22] states that "[m]ilitary specifications affirmatively required the use of asbestos-containing thermal insulation in relation

---

[20] Plaintiff distinguishes *Najolia* on the basis that the plaintiff was exposed during his service with the Navy. R. Doc. No. 41, at 2. *Najolia*'s reasoning did not depend upon this fact, and the Court finds that distinction immaterial.
[21] R. Doc. No. 1-5.
[22] *Cf. Najolia*, 883 F. Supp. 2d at 654.

6

to" turbines[23] and that "[t]he turbines manufactured and supplied by Westinghouse for use aboard any Navy vessel were required to meet detailed and precise Navy specifications,"[24] with "the Navy retain[ing] ultimate decision authority over the design of the turbines."[25] Gate also described a thorough and detailed testing process that was overseen by the Navy[26] and stated that all of Westinghouse's Navy equipment "was approved and accepted by the Navy as being in accordance with those specifications."[27]

The affidavit of U.S. Navy Rear Admiral Roger B. Horne,[28] which also appears to be identical to the affidavit considered by the court in *Najolia*,[29] states that "[t]he design of turbines and development of turbine military specifications are essential aspects of the Navy's shipbuilding program [which] are built on the totality of the Navy's experience in fighting and planning for wars."[30] Horne stated that the Navy retains "ultimate authority in all things related to the ship's operation or ship's construction, repair and overhaul"[31] and that "Westinghouse and GE turbines[] were manufactured according to plans and specifications prepared, written and issued exclusively by the Navy."[32] Especially because of Horne's long career in ship design and

---

[23] R. Doc. No. 1-5, ¶ 8; *cf. Najolia*, 883 F. Supp. 2d at 654 (quoting the same line from Gate's affidavit).
[24] R. Doc. No. 1-5, ¶ 13.
[25] R. Doc. No. 1-5, ¶ 15.
[26] R. Doc. No. 1-5, ¶¶ 16-20.
[27] R. Doc. No. 1-5, ¶ 29. Plaintiff's asserts, without citation to authority or to any specific record evidence, that "[b]y not including [asbestos] warnings, defendant's products failed to conform to the Navy's specifications." R. Doc. No. 26-1, at 23. This assertion is directly rebutted by the affidavit of Dr. Samuel A. Forman: "In my research, I have not located a single instance in which the Navy, at any time during the 1930s through the 1960s, instructed or permitted a supplier of engineering equipment to a vessel or facility to affix or provide any asbestos-related warning with its equipment." R. Doc. No. 1-10, ¶ 36.
[28] R. Doc. No. 1-6.
[29] *Cf. Najolia*, 883 F. Supp. 2d at 654.
[30] R. Doc. No. 1-6, ¶ 11.
[31] R. Doc. No. 1-6, ¶ 14.
[32] R. Doc. No. 1-6, ¶ 16.

compliance monitoring,[33] "his attestation that '[i]t was the Navy, not contract manufacturers, that required the use of asbestos thermal insulation with turbines intended for installation on Navy ships,'[34] carries significant weight." *Najolia*, 883 F. Supp. 2d at 654 (alteration in original).

Just as the court did in *Najolia*, this Court "finds that there is sufficient proof that, for removal purposes, and without deciding the merits of the proposed defense, [Westinghouse] acted under the direction of the Navy in designing and manufacturing the products at issue." *Id.*; *see also Crocker*, 852 F. Supp. at 1326 ("The submission of the Gates affidavit, which is unrebutted, shows clearly that Westinghouse was acting under the direction of the Navy in the construction of the marine turbines."). The work done by Westinghouse went "beyond simple compliance with the law and . . . at least arguably, [Westinghouse] performed a job that, in the absence of a contract with a private firm, the Government itself would have had to perform." *See Watson*, 551 U.S. at 153-54.

Plaintiff's arguments that these turbines are sometimes sold to other buyers as "off the shelf" items oversimplifies the nature of the equipment at issue, and such an argument does not rebut the strength of this evidence for removal purposes. *See Kerstetter v. Pac. Scientific Co.*, 210 F.3d 431, 437 (5th Cir. 2000) ("[T]he government procurement officer did not order [the equipment] in the same way he would order light bulbs, but rather, government engineers approved the inclusion of these specific components into a complex piece of equipment."); *Vedros v. Northrop Grumman Shipbuilding, Inc.*, No. 11-67281, 2012 WL 3155180, at *6 (E.D. Pa. Aug. 2, 2012). Accordingly, the Court finds that Westinghouse "acted pursuant to a federal officer's directions" when it manufactured turbines for the Navy. *See Winters*, 149 F.3d at 398.

---

[33] *See, e.g.*, R. Doc. No. 1-6, ¶¶ 1, 16.
[34] R. Doc. No. 1-6, ¶ 25.

Of course, it is not enough to show merely that Westinghouse acted pursuant to a federal officer's direction—such actions must have a causal nexus to plaintiff's claims. With respect to the circumstances of plaintiff's exposure to asbestos, the notice of removal states: "Between 1967 and 1973, a number of Navy destroyer escorts were constructed at Avondale, including the *U.S.S. Connole* (DE 1056). *Upon information and belief*, *at least some* of these Navy vessels were outfitted with asbestos-containing or asbestos-insulated turbines which were manufactured and supplied to the Navy by Westinghouse."[35] Plaintiff argues: "The problem is that Westinghouse has attached no documentary evidence or testimony establishing this fact with regard to its turbines aboard any destroyer escorts at Avondale. In fact, there is not one piece of evidence whatsoever attached by Westinghouse regarding a destroyer escort built at Avondale."[36]

Plaintiff's own testimony, however, establishes the connection between his claims and Westinghouse's actions. Plaintiff stated in his deposition: "[On] December 13th of '67 I started working there again and worked on the -- on the -- all of the destroyer escorts they built there. I think we built 27. I worked in the engine rooms."[37] The testimony continued:

> Q: Now, you said there were also turbines in the engine room.
> A: Yes.
> Q: Who manufactured the turbines?
> A: The turbines were GE and Westinghouse.
> Q: And you said there were also boilers in the engine room.
> A: Yes.
> Q: Who manufactured the boilers?
> A: They were Foster-Wheeler boilers.[38]

---

[35] R. Doc. No. 1, at 2 (emphasis added).
[36] R. Doc. No. 26-1, at 2.
[37] R. Doc. No. 1-3, at 2.
[38] R. Doc. No. 26-28, at 2.

This testimony clearly shows that plaintiff's work in the engine rooms of ships manufactured at Avondale, including destroyer escorts, brought him into direct contact with Westinghouse's, Foster Wheeler's, and GE's asbestos-containing equipment. Plaintiff is correct that Westinghouse has not produced any documents showing that its products were installed on the destroyers at Avondale, but plaintiff's own testimony establishes that the turbines were manufactured either by Westinghouse or by GE, who joined in Westinghouse's notice of removal. Accordingly, there is some "federal interest in the matter," and the required causal nexus is established. *See Winters*, 149 F.3d at 398. The Court finds that Westinghouse has met the second requirement for federal officer removal.

### C.     Colorable Defense

Westinghouse asserts that it is entitled to a government contractor defense with respect to plaintiff's design-defect claims.[39] "To invoke the military contractor defense, the defendants must prove that: (1) the government approved reasonably precise specifications for the item; (2) the item conformed to those specifications; and (3) the contractor warned the government about the dangers from the use of the item that were known to the contractor but not to the government." *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 419 (5th Cir. 2001) (citing *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988)). "The government contractor defense in *Boyle*, '[s]tripped to its essentials,' is fundamentally a claim that '[t]he Government made me do it.'" *In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 465 (5th Cir. 2010) (alterations original) (quoting *In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d 626, 632 (2d Cir. 1990)). "The

---

[39] R. Doc. No. 1, ¶ 12.

only analysis necessary to determine the application and scope of government contractor immunity is the three-step *Boyle* test."[40] *Id.* at 461.

First, "[t]he 'reasonably precise' standard is satisfied as long as the specifications address, in reasonable detail, the product design feature[] alleged to be defective." *Kerstetter*, 210 F.3d at 438. "[T]he mere fact that a corporation participates in a regulated industry is insufficient to support removal, absent a showing that the particular conduct is closely linked to detailed and specific regulations." *Williams*, 1998 WL 526612, at *4. For the reasons discussed above in connection with the "acting under" requirement, Westinghouse has made a sufficient showing that it was required to follow "reasonably precise" specifications by the U.S. Navy. *See Kerstetter*, 210 F.3d at 438. Accordingly, Westinghouse has made a colorable showing with respect to the first element.

Second, Westinghouse must show that "the item conformed to those specifications." *Miller*, 275 F.3d at 419. The Horne affidavit makes clear that each of Westinghouse's turbines was subject to rigorous testing and that any non-conforming turbine would be rejected.[41] Accordingly, Westinghouse has made a colorable showing with respect to the second element.

Third, Westinghouse must demonstrate that it "inform[ed] the Government of any dangers in the use of equipment that are known to [it], *but not known to the Government*." *Williams*, 1998 WL 526612, at *4 (citing *Boyle*, 487 U.S. at 512). Horne attests, "The Navy has been aware of the health risk of exposure to asbestos dust since at least the 1920s."[42] This

---

[40] Accordingly, plaintiff's arguments relative to the need for a "unique federal interest" and a conflict between state and federal law are irrelevant. R. Doc. No. 26-1, at 12-15.

[41] R. Doc. No. 1-6, ¶ 23 ("The military specifications for turbines ensured that each and every turbine ordered by the Navy, regardless of the identity of the specific contract manufacturer, was uniform, complied with the Navy's combat requirements and would operate in the manner demanded by the Navy.").

[42] R. Doc. No. 1-6, ¶ 28.

statement is supported by the affidavit of Dr. Samuel A. Forman, a doctor who served in the Navy[43] and who has a unique understanding of "the Navy's historical handling and knowledge of various industrial hygiene issues, including asbestos disease."[44] Dr. Forman's affidavit states, "The Navy's knowledge in the areas of asbestos and associated health conditions has been quite complete when compared to available knowledge over time, and at least by the early 1940s, the Navy had become a leader in the field of occupational medicine relating to, among other things, asbestos exposure."[45] The Court also notes that the Fifth Circuit has found in other cases "that, during the World War II time period, the Government knew of the dangers of asbestos." *Id.*

Westinghouse had no responsibility to warn the Navy regarding dangers about which it was already aware. *Stout v. Borg-Warner Corp.*, 933 F.2d 331, 336 (5th Cir. 1991) ("[The manufacturer] only had the duty to warn the government of dangers of which the government had no knowledge."). Plaintiff asserts, without citation to any authority, that Westinghouse must "establish that the Navy had more knowledge than [it] did regarding the hazards of asbestos,"[46] but such assertion is meritless. *See Haltiwanger v. Unisys Corp.*, 949 F. Supp. 898, 904 (D.D.C. 1996) ("If the government was already independently aware of a risk and chose to act regardless of that knowledge, defendant may still employ the government contractor defense without further warning the government.")[47] (citing *Stout*, 933 F.2d at 335-36). Accordingly, Westinghouse has made a colorable showing with respect to the third element.

---

[43] R. Doc. No. 1-10, ¶¶ 1-7.
[44] R. Doc. No. 1-10, ¶ 8.
[45] R. Doc. No. 1-10, ¶ 19.
[46] R. Doc. No. 26-1, at 24.
[47] *See* R. Doc. No. 1-6, ¶ 27 ("There is no way to battle harden a ship to the extent that no losses to personnel or equipment are ever sustained. For this reason, the Navy continually evaluated the combat benefits of specified equipment and materials against the potential risk to the health and safety of Navy personnel and civilian workers."); R. Doc. No. 1-10, ¶ 37 ("The Navy rejected

## CONCLUSION

For the foregoing reasons, Westinghouse has made a sufficient showing with respect to plaintiff's design-defect claims to entitle it to removal pursuant to § 1442. Because the Court finds that Westinghouse properly removed the case from state court, it need not further consider GE's or Foster Wheeler's joinder in the notice of removal. *See, e.g.*, *Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981) ("[The federal officer] alone can remove without other defendants joining in the petition, and the entire case is removed to the federal court."). Accordingly,

**IT IS ORDERED** that the motion is **DENIED**.

New Orleans, Louisiana, March 18, 2014.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

participation from manufacturers in its efforts to alert its personnel to potential asbestos hazards in navy operations. The Navy pursued the issue in its own way.").

13