UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL COMARDELLE** | **CIVIL ACTION** |
| **VERSUS** | **No. 13-6555** |
| **PENNSYLVANIA GENERAL INSURANCE COMPANY ET AL.** | **SECTION I** |

## ORDER AND REASONS

Before the Court is a motion[1] filed by defendant, Huntington Ingalls Incorporated ("Avondale"), for partial summary judgment regarding plaintiffs' Louisiana Civil Code Articles 1821-1823 claims relative to certain "buy-back" agreements. Plaintiffs have filed an opposition.[2] For the following reasons, the motion is **GRANTED**.

## BACKGROUND

Plaintiffs allege that decedent, Michael Comardelle ("Comardelle"), was "exposed to asbestos and asbestos-containing products manufactured, distributed, and sold" by defendants during the course of his employment from 1963 through 1979.[3] Plaintiffs allege, "As a result of these exposures to toxic substances, including asbestos, [Comardelle] contracted cancer, mesothelioma, and lung cancer, which was first diagnosed on approximately September 25, 2013."[4] Comardelle died on May 3, 2014, and his widow and children were substituted as plaintiffs.[5]

---

[1] R. Doc. No. 249.
[2] R. Doc. No. 286.
[3] R. Doc. No. 1-2, ¶ 6.
[4] R. Doc. No. 1-2, ¶ 9.
[5] R. Doc. No. 100.

Among a myriad of other claims, plaintiffs seek to recover from Avondale's executive officers individually via certain insurance policies purchased by Avondale which insured against the executive officers' individual liability for actions taken within the scope of their employment.[6] Highlands Insurance Company ("Highlands") and American Motorists Insurance Company ("American Motorists"), the insurers who issued the subject policies,[7] are now insolvent,[8] but plaintiffs assert that Avondale assumed its insurers' responsibilities under the policies pursuant to so-called "buy-back" agreements.[9] Plaintiffs claim that Avondale assumed the role of an "additional insurer" under the policies[10] and that it is obligated to plaintiffs for its executive officers' individual liability because Avondale stands in the shoes of Highlands and American Motorists.[11] Avondale asserts that it is not liable for its executive officers' individual liability under the policies.[12]

## STANDARD OF LAW

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the

---

[6] R. Doc. No. 1-2, ¶ 3; *see also* R. Doc. No. 286, at 12 n.2 ("Since many of the Avondale executive officers are dead, the only means to pursue claims against the Avondale executive officers is through direct action against the insurers."). Plaintiffs' counsel advised the Court at the November 17, 2014 telephone status conference that only those executive officers still living were made direct defendants. *See* R. Doc. No. 445; R. Doc. No. 1-2, ¶¶ 3-5.
[7] R. Doc. No. 249-12, at 1-2; R. Doc. No. 249-13, at 1-2. According to Avondale, "[t]he Highlands policies span the years 1970-1971; the American Motorists policies span the years 1950-1957 and 1972-1975. These insurance policies provided coverage to both Avondale and Avondale's executive officers." R. Doc. No. 249-1, at 9. Plaintiffs do not dispute the coverage periods. *Cf.* R. Doc. No. 286-2, at 1-2.
[8] R. Doc. Nos. 249-8, 249-9.
[9] R. Doc. No. 1-2, ¶¶ 4-5.
[10] R. Doc. No. 1-2, ¶¶ 4-5.
[11] R. Doc. No. 286, at 12 n.2.
[12] *See* R. Doc. No. 249.

initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## DISCUSSION

A.    **Louisiana Law**[13]

The Louisiana Civil Code provides "special regulations for assumptions of obligations." La. Civ. Code art. 1821 cmt. (b); *see generally* Saul Litvinoff, 5 La. Civ. L. Treatise, Law of Obligations, ch. 10 (2d ed. 2012). "An obligor [Highlands and American Motorists] and a third person [Avondale] may agree to an assumption by the latter of an obligation of the former." La. Civ. Code art. 1821.[14] "A person [Avondale] who, by agreement with the obligor [Highlands and American Motorists], assumes the obligation of the latter is bound only to the extent of his assumption. The assuming obligor [Avondale] may raise any defense based on the contract by which the assumption was made." La. Civ. Code art. 1822.

B.    **The Buy-Back Agreements**

The buy-back agreement between Avondale and Highlands states, "In exchange for the mutual covenants, promises and consideration which are described throughout this Agreement, the Settling Parties hereby agree to compromise, release and settle all claims arising out of or incident to the Policies and to undertake the acts and obligations set forth in this section."[15] In exchange for the payment of a one-time lump sum settlement,[16] the agreement states that Avondale "expressly releases, acquits and forever discharges . . . Highlands from any and all

---

[13] The parties agree that Louisiana law governs all the issues presented to the Court by Avondale's motion, notwithstanding any language in the buy-back agreements, *see* R. Doc. No. 249-12, § 11.09 (referencing Texas law); R. Doc. No. 249-13, § VIII(L) (referencing Illinois law), and counsel here waived any argument to the contrary. *See* R. Doc. No. 399.

[14] The U.S. Court of Appeals for the Fifth Circuit has noted that "a promise to pay the debt of [another] person must be explicit, clear, and in writing." *United States v. Park Towers, Inc.*, 8 F.3d 306, 310 (5th Cir. 1993) (citing *Southland Plumbing Supply, Inc. v. Crescent Refrigeration, Inc.*, 542 So. 2d 771, 773 (La. App. 4 Cir. 1989); La. Civ. Code art. 1821).

[15] R. Doc. No. 249-12, § 3.00.

[16] R. Doc. No. 249-12, § 3.01.

obligations arising under or related in any way to the Policies."[17] Avondale also agreed that its "interest in the Policies shall be deemed exhausted in its entirety" and that "any obligation of Highlands to [Avondale] under the Policies shall be void *ab initio*, and all past, present or future obligations to [Avondale] for liabilities known or unknown of any kind under the Policies are forever discharged."[18] Avondale agreed to defend and indemnify Highlands in the event that Highlands or its receiver are subject to "claims arising out of the Policies brought by third parties, additional insureds and/or individuals or entities claiming coverage under the Policies against Highlands," including any claims brought against Highlands pursuant to the Louisiana Direct Action Statute.[19]

The buy-back agreement between Avondale and American Motorists is similar.[20] The recitals at the beginning of the agreement state that "the Parties intend to fully and forever extinguish all rights, duties and coverage under the POLICIES and to render them null and void, as if they had never been issued."[21] In exchange for the payment of a one-time lump sum settlement,[22] the agreement states that Avondale "hereby fully, forever, and irrevocably releases and discharges [American Motorists] from any and all INSURANCE COVERAGE CLAIMS[23]

---

[17] R. Doc. No. 249-12, § 4.01. The agreement elaborates on this broad release with specific examples. *See* R. Doc. No. 249-12, §§ 4.01-.05.
[18] R. Doc. No. 249-12, § 6.01.
[19] R. Doc. No. 249-12, § 6.02.
[20] The Court notes that the American Motorists buy-back agreement includes a number of other insurers as well. *See* R. Doc. No. 249-13, at 2. However, the Court refers solely to American Motorists because only American Motorists is referred to by the parties or mentioned in the complaint. *See* R. Doc. No. 1-2, ¶ 5.
[21] R. Doc. No. 249-13, at 2.
[22] R. Doc. No. 249-13, §§ I(M), II.
[23] "Insurance coverage claims" are defined as "any CLAIM, known or unknown, from the beginning of time until the end of time, arising out of, based upon, or in any manner relating to, or implicating, the terms and conditions of the POLICIES." R. Doc. No. 249-13, § I(E).

5

arising out of, or in any manner relating to, the POLICIES."[24] Avondale agreed that "all limits of liability, including, but not limited to, all occurrence and aggregate limits, of the POLICIES, are fully exhausted,"[25] and the agreement provides that "the POLICIES are hereby rescinded for all purposes, [are] null and void, and are void *ab initio*, as if they had never been issued."[26] Avondale also agreed to defend and indemnify American Motorists "against any and all INDEMNIFIED CLAIMS[27] under the POLICIES"[28] but limited to "those claims arising out of the POLICIES brought by third parties, additional insureds and/or individuals or entities claiming coverage under the POLICIES against [American Motorists]."[29]

### C. Analysis

Although the Court concludes that the motion should be granted based on the unambiguous language of the buy-back agreements, which do not constitute an assumption of any obligation to plaintiffs under the insurance policies, the Court briefly outlines the parties' wide-ranging arguments. Avondale contends that plaintiffs' claims under the buy-back agreements are an attempt to circumvent a state-law venue ruling, *Trascher v. Northrop Grumman Ship Systems, Inc.*, 43 So. 3d 961 (La. 2010).[30] Avondale also asserts that it cannot be sued pursuant to the Louisiana Direct Action Statute because it is not an "insurer" within the meaning of the Louisiana Insurance Code.[31] Avondale argues that Articles 1821-1823 are not applicable to this case because "[b]oth Highlands and American Motorists are in bankruptcy

---

[24] R. Doc. No. 249-13, § III(A).
[25] R. Doc. No. 249-13, § III(E).
[26] R. Doc. No. 249-13, § III(D).
[27] "Indemnified claims" are defined as "any INSURANCE COVERAGE CLAIMS including but not limited to, INSURANCE COVERAGE CLAIMS asserted pursuant to a direct action statute." R. Doc. No. 249-13, § I(D).
[28] R. Doc. No. 249-13, at 7, § IV(A).
[29] R. Doc. No. 249-13, at 8, § IV(E).
[30] R. Doc. No. 249-1, at 6-9.
[31] R. Doc. No. 249-1, at 9-14.

proceedings, and therefore plaintiffs no longer have a right or cause of action against them. There is no debt owed by Highlands and American Motorists. . . . Accordingly, there is no debt or obligation between plaintiffs and Highlands or American Motorists to be assumed or satisfied by Avondale . . . ."[32] Avondale contends that "[a]ny change to the rights of third parties is strictly due to the fact that Highlands and American Motorists are now insolvent,"[33] and not due to the buy-back agreements, which "have no relevance regarding executive officers, and at most, they establish only that Avondale is self-insured for the relevant time periods—a fact Avondale is willing to stipulate."[34]

Plaintiffs dismiss Avondale's discussion of *Trascher* and the Louisiana Direct Action Statute as a distraction, and they urge the Court to focus on the buy-back agreements and whether Avondale assumed its insurers' obligations pursuant to Articles 1821-1823.[35] The only provisions in the buy-back agreements that plaintiffs identify in support of their claims are the releases and the defense and indemnity agreements which, plaintiffs note, refer to the Louisiana Direct Action Statute.[36] Plaintiffs conclude that, because the insurance policies underlying the buy-back agreements covered Avondale's executive officers,[37] "[t]he buy-back agreements make Avondale, [Highlands], and [American Motorists] solidarily liable under those insurance policies and Louisiana law, and plaintiffs have both a right of action and a cause of action against

---

[32] R. Doc. No. 249-1, at 15.
[33] R. Doc. No. 332, at 5.
[34] R. Doc. No. 249-1, at 13.
[35] R. Doc. No. 286, at 3.
[36] R. Doc. No. 286, at 5-6.
[37] R. Doc. No. 286, at 7-8.

Avondale pursuant to Louisiana contract law, as standing in the shoes of its insurers under the insurance policies covered by the written buy-back agreements."[38]

Based on the unambiguous language of the buy-back agreements, the Court finds that Avondale did not assume any obligations to plaintiffs under the insurance policies issued by Highlands and American Motorists, and Avondale, Highlands, and American Motorists are not solidarily obligated to plaintiffs. The obvious purpose of the buy-back agreements was not to substitute Avondale as the obligor under the insurance policies, but to extinguish the obligations under the insurance policies altogether: the policies are "void *ab initio*,"[39] "as if they had never been issued."[40] The defense and indemnity obligations upon which plaintiffs rely[41] are triggered only in the event that Highlands or American Motorists is subject to a claim by a third-party claimant.[42] Plaintiffs did not bring claims against either insurer due to their insolvency, so Avondale's defense and indemnity obligations were never triggered. If the agreements use the word "assume" at all, plaintiffs have not noted it, the Court has not discovered it, and plaintiffs' conclusory statement that an obligation was assumed is completely disconnected from the actual language of the buy-back agreements. As stated previously, "a promise to pay the debt of a third person must be explicit, clear, and in writing," *Park Towers*, 8 F.3d at 310, and the buy-back agreements fall far short of this standard.[43,44]

---

[38] R. Doc. No. 286, at 8 (citing La. Civ. Code arts. 1794, 1821-1823); *see also* R. Doc. No. 286, at 11 ("In the case at bar, Avondale signed a contract with its insurers making it directly liable to the plaintiffs on the insurance contracts pursuant to Louisiana Civil Code Article 1821.").
[39] R. Doc. No. 249-12, § 6.01; R. Doc. No. 249-13, § III(D).
[40] R. Doc. No. 249-13, § III(D); *see also* R. Doc. No. 249-12, § 6.01.
[41] *See* R. Doc. No. 286, at 5-6.
[42] *See* R. Doc. No. 249-12, § 6.02; R. Doc. No. 249-13, at 7-8, § IV(A), (E).
[43] Both sides assert that they are supported by a September 30, 2011 decision by Judge Michael Bagneris in the Civil District Court for the Parish of Orleans, State of Louisiana, in *Walker v. Avondale Industries, Inc.*, No. 03-3384 (R. Doc. No. 286-8). In *Walker*, the court addressed similar claims based on the same buy-back agreements at issue here. *See* R. Doc. No. 286-8, at

The cases cited by plaintiffs are either irrelevant or distinguishable and fail to address the issue of whether the buy-back agreements constitute an assumption of any obligation under the policies.[45] Furthermore, plaintiffs' insistence that they are third-party beneficiaries of the policies[46] is unavailing because those policies were terminated by the buy-back agreements before plaintiffs ever made any claims. *See* La. Civ. Code art. 1978 ("Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary's agreement."); La. Civ. Code art. 1979 ("The

---

3-9. The court denied an exception of no cause of action because the plaintiffs "stated a viable cause of action" based on "the face of the Plaintiffs' petition," which was "[a]ll that matters at this juncture." R. Doc. No. 286-8, at 10. The court further noted that "the arguments made by Avondale regarding the direct action statute are moot" and that the arguments relating to the Louisiana Insurance Code are "not germane to the actual issue before the Court." R. Doc. No. 286-8, at 11. The court also noted that "the purpose of [the] buy-backs and the intent of the parties to [the] same are not germane to the exception of no cause of action." R. Doc. No. 286-8, at 10; *see also* R. Doc. No. 286-8, at 5 ("If you got an exception of no cause of action, down the line you will get a motion for summary judgment. But it appears that a cause of action has been articulated.").

Avondale's partial summary judgment motion hinges on the parties' intent and the language of the buy-back agreements and, therefore, *Walker* is not particularly relevant here. The other state court cases provided by the parties either fail to provide written reasons, R. Doc. Nos. 249-7, 286-5, 286-6, 286-7, or focus on issues not relevant to the motion before the Court, R. Doc. Nos. 249-5, 249-6. Accordingly, the Court does not afford these other opinions any weight in its analysis.

[44] *See* R. Doc. No. 249-1, at 16. Plaintiff's complaint also mentions Article 1823, which states: "An obligee and a third person may agree on an assumption by the latter of an obligation owed by another to the former. That agreement must be made in writing. That agreement does not effect a release of the original obligor." La. Civ. Code art. 1823. Article 1823 is inapplicable because there is no written agreement between plaintiffs and Avondale

[45] *See* R. Doc. No. 286, at 8-11.

[46] *See* R. Doc. No. 286, at 12-14. To the extent that plaintiffs contend that they are third-party beneficiaries of the buy-back agreements, they have not identified any provision of the buy-back agreements, or any other evidence, that raises a genuine issue of material fact regarding any of the elements that they must prove. *See Price v. Housing Auth. of New Orleans*, 453 F. App'x 446, 450 (5th Cir. 2011) ("The Louisiana Supreme Court has laid out a test to determine if a contract intends to create a stipulation *pour autrui:* '1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee.'") (footnote omitted) (quoting *Joseph v. Hosp. Serv. Dist. No. 2 of the Parish of St. Mary*, 939 So. 2d 1206, 1211 (La. 2006)).

stipulation may be revoked only by the stipulator and only before the third party has manifested his intention of availing himself of the benefit."); *Mobil Exploration & Producing U.S. Inc. v. Certain Underwriters Subscribing to Cover Note 95-3317(A)*, 837 So. 2d 11, 35 (La. App. 1 Cir. 2003) ("In order for the consequences of La. C.C. arts. 1978-1982 to be triggered, the third party must evidence his intent to avail himself of the stipulated benefits."), *writs denied*, 841 So. 2d 805, 843 So. 2d 1129; *see generally* Fred McGaha, Comment, *Third-Party Beneficiary Contracts*, 45 La. L. Rev. 797, 801-02 (1985).

The buy-back agreements were both executed in 2004,[47] but Comardelle was not diagnosed with mesothelioma until 2013.[48] Clearly plaintiffs could not have manifested any intention to avail themselves of that insurance coverage prior to the policies' dissolution, and there is no evidence that plaintiffs even knew that these insurance policies existed prior to this litigation.

## CONCLUSION

Although plaintiffs' convoluted claims are a creative attempt to recover from otherwise unreachable defendants, such claims are untethered from the clear language and purpose of the buy-back agreements. Accordingly,

---

[47] R. Doc. No. 249-12, at 11-12; R. Doc. No. 249-13, at 14.
[48] R. Doc. No. 1-2, ¶ 9.

**IT IS ORDERED** that the motion is **GRANTED** and that plaintiff's Louisiana Civil Code Articles 1821-1823 claims relative to the buy-back agreements are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, November 18, 2014.

                                              **LANCE M. AFRICK**
                                     **UNITED STATES DISTRICT JUDGE**