UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL COMARDELLE** | **CIVIL ACTION** |
| **VERSUS** | **No. 13-6555** |
| **PENNSYLVANIA GENERAL INSURANCE COMPANY ET AL.** | **SECTION I** |

## ORDER AND REASONS

Before the Court is a motion[1] filed by defendant, Union Carbide Corporation ("Union Carbide"), seeking (1) to exclude the testimony of plaintiffs' expert, Dr. Samuel Hammar; and (2) summary judgment on the issue of causation, as plaintiffs allegedly have no evidence of exposure to asbestos at Union Carbide's facility. Plaintiffs oppose the motion.[2] For the following reasons, the motion is **DENIED**.

## BACKGROUND

Plaintiffs allege that decedent, Michael Comardelle ("Comardelle"), was "exposed to asbestos and asbestos-containing products manufactured, distributed, and sold" by defendants during the course of his employment from 1963 through 1979.[3] Plaintiffs allege, "As a result of these exposures to toxic substances, including asbestos, [Comardelle] contracted cancer, mesothelioma, and lung cancer, which was first diagnosed on approximately September 25, 2013."[4] Comardelle died on May 3, 2014, and his widow and children were substituted as plaintiffs.[5]

---

[1] R. Doc. No. 431.
[2] R. Doc. No. 452.
[3] R. Doc. No. 1-2, ¶¶ 6, 66.
[4] R. Doc. No. 1-2, ¶ 9.
[5] R. Doc. No. 100.

Among a myriad of other claims, plaintiffs allege that Comardelle was exposed to asbestos while working at a Union Carbide facility beginning in 1973.[6] Union Carbide asserts that Dr. Hammar's testimony should be excluded pursuant to *Daubert*,[7] and that without such testimony, the claims against it should be dismissed as plaintiffs have no evidence that Comardelle was exposed to asbestos at Union Carbide's facility.[8]

## LAW AND ANALYSIS

The Court first addresses the potentially dispositive portion of the motion.[9]

### I. Summary Judgment

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point

---

[6] *See* R. Doc. No. 1-2, ¶ 66.
[7] R. Doc. No. 431-1, at 4-16.
[8] R. Doc. No. 431-1, at 16.
[9] The Court notes that plaintiffs assert: "To plaintiffs['] knowledge, Union Carbide never scheduled a conference regarding any motion for summary judgment. Accordingly, plaintiffs submit that this motion has been filed in violation of this Court's order and should be denied on this basis alone." R. Doc. No. 452, at 1; *see also* R. Doc. No. 137, at 2; R. Doc. No. 191, at 2. The Court also notes that Union Carbide's memorandum in support of its motion contains a single sentence of argument regarding its basis for summary judgment, R. Doc. No. 431-1, at 16, though its reply memorandum contains further development of its position. Nonetheless, despite the alleged violation of this Court's scheduling order, and despite the wholly inadequate briefing of the summary judgment issue in Union Carbide's opening memorandum, the Court exercises its discretion to consider Union Carbide's argument.

out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

Union Carbide contends: "Dr. Hamm[a]r cannot opine that Mr. Co[m]ardelle's work at Union Carbide was a substantial contributing cause of his mesothelioma. Without such proof, Union Carbide is entitled to dismissal on summary judgment."[10] Union Carbide further argues in its reply memorandum that plaintiffs do not have any evidence to suggest that "any of the insulation [Comardelle] worked around actually contained asbestos," and that "[t]he corroborating evidence in this case establishes that in 1972, Union Carbide discontinued the use

---

[10] R. Doc. No. 431-1, at 16.

of asbestos containing insulation and put procedures in place that would have not allowed Mr. Comardelle in the area where insulators were removing insulation that contained asbestos."[11]

Plaintiffs contend[12] that Comardelle testified that he worked alongside insulators at Union Carbide's facility and that when old insulation was removed, he was exposed to insulation dust.[13] Comardelle noted that "a lot of times they [the insulators] would take insulation down for us to mount instruments to piping or a boiler."[14] Plaintiffs also provide the testimony of Clifton Shewmaker, an insulator who worked at the Union Carbide facility both during its construction and during the time period that Comardelle worked there.[15] Shewmaker testified that the original insulation at Union Carbide contained asbestos and that subsequent containment measures were not used and/or were subject to lax enforcement.[16] The Court further notes that plaintiffs produced a Union Carbide document stating that asbestos-containing insulation was used in cable trays,[17] and Comardelle testified that he was present and working on these cable trays while the insulation was being cut to size.[18] Plaintiffs' expert, Frank Parker, III, concluded that

---

[11] R. Doc. No. 552, at 4 (emphasis omitted). Union Carbide's representative, Ted Porada, testified that much of the original insulation at the facility most likely contained asbestos. R. Doc. No. 453-6, at 5-6.
[12] R. Doc. No. 452, at 2-10.
[13] R. Doc. No. 452-4, at 21-29, 32-35.
[14] R. Doc. No. 452-4, at 26-27.
[15] R. Doc. No. 452, at 4; *see also* R. Doc. No. 452-11. Union Carbide objects that Shewmaker has not been deposed in this case. R. Doc. No. 552, at 13. Shewmaker was, however, listed on plaintiffs' witness list. R. Doc. No. 303, at 9. Union Carbide also states that Shewmaker's testimony is "intentionally misleading and completely irrelevant to this case." R. Doc. No. 552, at 13. Union Carbide provides no support for this assertion, which, like much of its briefing, is needlessly inflammatory and unhelpful to the Court.
[16] R. Doc. No. 452-11, at 4-5, 7, 10-11.
[17] R. Doc. No. 452-9, at 1.
[18] R. Doc. No. 452-4, at 51-54.

Comardelle's exposures at the Union Carbide facility significantly increased his risk of developing mesothelioma.[19]

The Court need not examine in detail the rest of the parties' evidence because it is clear that a genuine issue of material fact precludes summary judgment on the issue of Comardelle's exposure to asbestos at Union Carbide's facility. Accordingly, the Court now turns to Union Carbide's *Daubert* argument regarding Dr. Hammar.

## II.     *Daubert*

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)). Additionally, Rule 702 states that an expert may be qualified based on "knowledge, skill, experience, training, or education." *Hicks*, 389 F.3d at

---

[19] R. Doc. No. 452-5, at 5-6. The Court notes that Union Carbide has filed a motion to exclude Parker's testimony, R. Doc. No. 421, as has defendant, Bayer CropScience, Inc., R. Doc. No. 408. The Court makes no ruling or comment with respect to these motions.

524; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (discussing witnesses whose expertise is based purely on experience). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). However, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.*; *see Daubert*, 509 U.S. at 596.

The U.S. Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire*, 526 U.S. at 147.

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining

'how to test an expert's reliability.'"). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

With respect to determining the relevancy of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702 advisory committee's note).

Dr. Hammar is a pathologist,[20] and Union Carbide's motion does not challenge his qualifications. Rather, Union Carbide argues that (1) Dr. Hammar's opinions about the cause of Comardelle's mesothelioma are not based on sufficient facts and data,[21] (2) Dr. Hammar did not obtain an adequate asbestos exposure history pursuant to guidelines established by the Agency for Toxic Substances and Disease Registry ("ATSDR"),[22] and (3) Dr. Hammar testified that he did not have any information as to whether Comardelle was exposed to elevated levels of

---

[20] R. Doc. No. 431-4, at 11.
[21] R. Doc. No. 431-1, at 7.
[22] R. Doc. No. 431-1, at 12.

asbestos at Union Carbide or whether his exposure was "above any applicable regulatory standards."[23]

Union Carbide's challenges are meritless. First, Dr. Hammar reviewed an abundance of pathology material and medical records in compiling his report[24] and, as Union Carbide acknowledges, he reviewed Comardelle's testimony before his deposition.[25] Union Carbide has not provided any evidence that Dr. Hammar's methodology is unreliable or that he cannot reliably draw conclusions from the material that he reviewed.

Second, Union Carbide has not provided any evidence regarding the significance or necessity of using ATSDR's exposure history guidelines or how such guidelines relate to Dr. Hammar's pathological study. Without any evidence that Dr. Hammar's opinions are unreliable or insufficient because he improperly relied on Comardelle's deposition and medical records when evaluating Comardelle's exposure history, the Court will not exclude his testimony for his alleged failure to comply with the ATSDR guidelines.

Third, Dr. Hammar's lack of information about the details of Comardelle's exposure at Union Carbide is irrelevant because his report does not contain any conclusions regarding specific causation as to Union Carbide.[26] As discussed above, plaintiffs have provided enough evidence regarding Comardelle's exposure at Union Carbide from sources other than Dr. Hammar to raise a genuine issue of material fact. Moreover, Dr. Hammar need not know whether the asbestos concentrations at Union Carbide reached a particular level in order to offer an opinion as to causation. *See Robertson v. Doug Ashy Bldg. Materials, Inc.*, 77 So. 3d 339, 359 (La. App. 1 Cir. 2011) (citing *Rando v. Anco Insulations, Inc.*, 16 So. 3d 1065, 1091 (La. 2009))

---

[23] R. Doc. No. 431-1, at 16.
[24] R. Doc. No. 431-4, at 1-8.
[25] R. Doc. No. 431-1, at 3.
[26] *See* R. Doc. No. 431-4.

("[W]e cannot find, nor have we been directed to, any authority for the trial court's determination that a plaintiff must prove or that an expert must know the 'dose' of asbestos as to each particular defendant in order to establish causation.").

In sum, the Court finds that Union Carbide's arguments are more properly addressed to the weight of Dr. Hammar's testimony rather than its admissibility. The Court emphasizes that nothing in this order will preclude Union Carbide from cross-examining Dr. Hammar or presenting evidence regarding the issues raised in its motion.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the motion is **DENIED**.

New Orleans, Louisiana, December 15, 2014.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**
