## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL COMARDELLE** | **CIVIL ACTION** |
| **VERSUS** | **No. 13-6555** |
| **PENNSYLVANIA GENERAL INSURANCE COMPANY ET AL.** | **SECTION I** |

## ORDER AND REASONS

Before the Court is a motion[1] filed by defendant, Bayer CropScience, Inc. ("Amchem"), seeking "to exclude causation opinions regarding Benjamin Foster products based on the 'each and every exposure' theory."[2] Plaintiffs oppose the motion.[3] For the following reasons, the motion is **GRANTED**.

## BACKGROUND

Plaintiffs allege that decedent, Michael Comardelle ("Comardelle"), was "exposed to asbestos and asbestos-containing products manufactured, distributed, and sold" by defendants during the course of his employment from 1963 through 1979.[4] Plaintiffs allege, "As a result of these exposures to toxic substances, including asbestos, [Comardelle] contracted cancer, mesothelioma, and lung cancer, which was first diagnosed on approximately September 25, 2013."[5] Comardelle died on May 3, 2014, and his widow and children were substituted as plaintiffs.[6]

Among a myriad of other claims, plaintiffs allege that Comardelle was exposed to

---

[1] R. Doc. No. 407.
[2] R. Doc. No. 407, at 1.
[3] R. Doc. No. 447.
[4] R. Doc. No. 1-2, ¶¶ 6, 66
[5] R. Doc. No. 1-2, ¶ 9.
[6] R. Doc. No. 100.

asbestos-containing "coatings, sealants, and mastics" manufactured, distributed, and sold by Amchem,[7] including an adhesive called Benjamin Foster 81-27.[8] Plaintiffs intend to call Dr. Samuel P. Hammar as an expert witness to opine that Benjamin Foster 81-27 was a substantial contributing factor to the development of Comardelle's mesothelioma.[9] Amchem moves to exclude or limit this specific-causation[10] opinion testimony, as well as any other expert testimony that relies on an "every exposure" theory.[11]

## LAW AND ANALYSIS

### A.   *Daubert* and Rule 702

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

---

[7] *See* R. Doc. No. 1-2, ¶ 45.

[8] R. Doc. No. 407-1, at 1.

[9] *See* R. Doc. No. 407-1, at 1-2; R. Doc. No. 447, at 1-2.

[10] "'General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury.'" *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007)) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997)). Louisiana law recognizes this distinction. *See, e.g.*, *Zimko v. Am. Cyanamid*, 905 So. 2d 465, 485-86 (La. App. 4 Cir. 2005) ("Alternatively, American Cyanamid contends that Mrs. Zimko's experts, at best, established general causation—that asbestos fibers a worker brings home can cause disease—not specific causation—that asbestos fibers from American Cyanamid's facility actually caused Kenneth Zimko's mesothelioma.").

[11] R. Doc. No. 407-1, at 1 & n.1.

> (d) the expert has reliably applied the principles and methods to the facts of the case.

"To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)). Additionally, Rule 702 states that an expert may be qualified based on "knowledge, skill, experience, training, or education." *Hicks*, 389 F.3d at 524; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (discussing witnesses whose expertise is based purely on experience). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). However, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.*; *see Daubert*, 509 U.S. at 596.

The U.S. Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire*, 526 U.S. at 147.

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of

standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'"). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

With respect to determining the relevancy of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702 advisory committee's note).

**B.      Analysis**

"[I]n a number of recent cases, plaintiffs and their experts have advanced the argument that every exposure to asbestos is a factor in producing their illness." *See* Joseph Sanders, *The "Every Exposure" Cases and the Beginning of the Asbestos Endgame*, 88 Tul. L. Rev. 1153,

1157 (2014). As summarized by other courts addressing the admissibility of similar opinions, the "every exposure" theory "posits that any exposure to asbestos fibers *whatsoever* constitutes an underlying cause of injury to the individual exposed." *Krik v. Crane Co.*, No. 10-7435, 2014 WL 7330901, at *2 (N.D. Ill. Dec. 22, 2014) (emphasis in original); *see also Davidson v. Ga. Pac. LLC*, No. 12-1463, 2014 WL 3510268, at *2 (W.D. La. July 14, 2014) ("Dr. Schwartz testified that the 'every exposure' theory includes all exposures to asbestos as a cause of mesothelioma because there is no way to know which exposures caused it and which ones did not.").

Dr. Hammar's proposed specific causation testimony is an example of this "every exposure" theory. In his expert report, Dr. Hammar opines that "all asbestos fibers inhaled by an individual that reach the target organ have the *potential* to contribute to the development of lung cancer, mesothelioma, and other asbestos-related diseases."[12] At his deposition, he went further and opined that "*all of the exposures* that that individual had who developed mesothelioma, all of those would have contributed to *cause* his mesothelioma."[13] Accordingly, Dr. Hammar opines based on this "every exposure" theory that "if Comardelle was exposed to asbestos released from Amchem or Benjamin Foster adhesives, . . . those exposures [would] have been a substantial contributing cause of his disease."[14]

Amchem moves to exclude Dr. Hammar's testimony that Benjamin Foster 81-27 adhesive was a substantial factor in causing Comardelle's mesothelioma. According to Amchem, this is an "every exposure" theory opinion which does not pass muster under Rule 702 or

---

[12] R. Doc. No. 407-4, at 11-12 (emphasis added); *see also id.* at 17 ("[A]ll occupational and bystander exposures to asbestos above the concentration identified in the case-control epidemiology studies and within the latency period have the ability to contribute to the causation of mesothelioma, lung cancer, and other asbestos-related diseases.").

[13] R. Doc. No. 407-5, at 11 (emphasis added); *see also id.* at 12 (agreeing that "all of Mr. Comardelle's occupational exposures to asbestos were in fact contributing causes of his mesothelioma").

[14] R. Doc. No. 407-5, at 15.

*Daubert*. Amchem criticizes as wholly unsupported Dr. Hammar's leap from the general-causation premise that every asbestos exposure increases the *risk* of mesothelioma,[15] to the specific-causation opinion that Comardelle's exposure to Benjamin Foster 81-27 necessarily caused or contributed to his mesothelioma.[16] Amchem also faults Dr. Hammar for failing to consider any facts or data specific to Comardelle's exposure to Benjamin Foster 81-27, or to compare or differentiate between the different alleged asbestos exposures at issue in this case.[17] In support of these arguments, Amchem cites several recent district court opinions rejecting substantially similar expert causation testimony based on the "every exposure" theory.

First, in *Smith v. Ford Motor Co.*, the district court excluded Dr. Hammar's opinion that a plaintiff's exposure to brake dust caused his mesothelioma because "each and every exposure to asbestos by a human being who is later afflicted with mesothelioma, contributed to the formation of the disease." No. 08-630, 2013 WL 214378, at *1 (D. Utah Jan. 18, 2013). The *Smith* court held that opinion to be inadmissible and "agree[d] with the growing number of published

---

[15] This is referred to as a "dose-response" relationship in which "the more someone is exposed to asbestos, the greater their risk for the development of mesothelioma." *See, e.g.*, *Davidson v. Ga. Pac. LLC*, No. 12-1463, 2014 WL 3510268, at *1 (W.D. La. July 14, 2014).

[16] R. Doc. No. 407-1, at 7-8.

[17] R. Doc. No. 407-1, at 4-5. Amchem also moves to exclude the opinion because even if is reliable and admissible, it is "contrary to [Louisiana] law" and would not satisfy plaintiffs' burden of proof as to causation. *See* R. Doc. No. 407-1, at 9-12; *see also Davidson v. Ga. Pac. LLC*, 2014 WL 3510268, at *5-6 (excluding "every exposure" testimony on the additional basis that it is inconsistent with Louisiana tort law burdens of proof). The Court need not reach this issue at this time because the disputed opinion testimony is unreliable and inadmissible. The Court will address the applicable burden of proof with jury instructions, which will be consistent with the well-settled proposition that expert testimony is required to establish causation in a toxic tort case. *See, e.g.*, *LeBlanc ex rel. LeBlanc v. Chevron USA, Inc.*, 396 F. App'x 94 (5th Cir. 2010) (affirming district court's dismissal of Louisiana toxic tort claims on summary judgment after exclusion of plaintiff's causation experts); *see also Burst v. Shell Oil Co.*, No. 14-109, 2014 WL 3893304, at *2 (E.D. La. Aug. 8, 2014) ("Under Louisiana law, 'expert medical testimony is required when the conclusion regarding medical causation is one that is not within common knowledge.'") (Vance, C.J.) (quoting *Chavers v. Travis*, 902 So. 2d 389, 395 (La. App. 4 Cir. 2005)).

opinions from other courts that have reached a similar result: that the every exposure theory as offered as a basis for legal liability is inadmissible speculation that is devoid of responsible scientific support." *Id.* at *2. As the court in *Smith* succinctly explained, "Just because we cannot rule anything out does not mean we can rule everything in." *Id.* at *3. The court also noted the complete lack of "studies, reports, examinations, or data of any kind to show that the alleged dust that Mr. Smith allegedly breathed in . . . was sufficient to be a contributing cause, substantial or otherwise, to the development of" the disease." *Id.* at *4; *accord Anderson v. Ford Motor Co.*, 950 F. Supp. 2d 1217 (D. Utah 2013) (following *Smith*).

In *Davidson v. Georgia Pacific LLC*, the district court likewise rejected a causation opinion based on the "every exposure" theory, concluding that the theory "is not testable and consequently cannot have an error rate, thus failing to satisfy two *Daubert* factors." 2014 WL 3510268, at *5. The court also faulted the expert for failing to rely on any data "that would show that any particular defendant's product actually caused Davidson to develop mesothelioma." *Id.*[18]

In *Krik v. Crane Co.*, the district court rejected a specific causation opinion based on the theory that because an expert "cannot rule out that a single dose of asbestos causes injury. . . . any and all exposure to asbestos is necessarily harmful." 2014 WL 7330901, at *4. The district court held that "This is not an acceptable approach for a causation expert to take" *Id.* Accordingly, the *Krik* court excluded the testimony because it was unreliable and because the experts "fail[ed] to base their opinions on facts specific to this case." *Id.* at *5.

In opposition, plaintiffs submit a number of orders from state courts apparently denying motions to exclude Dr. Hammar's opinions, albeit without any articulated reasoning or

---

[18] The court in *Davidson* also reasoned that the "every exposure" theory is inconsistent with a Louisiana plaintiff's burden to establish causation. *See id.* at *6.

analysis.[19] The Court is unable to abdicate its gatekeeping function in *this* case solely because other courts in other cases have, for unknown reasons, declined to exclude Dr. Hammar's testimony. Accordingly, plaintiffs' citations have little persuasive weight.

The Court agrees with Amchem that Dr. Hammar's proposed specific causation opinions in this case are unreliable and inadmissible, essentially for the reasons articulated by the thoughtful opinions in *Smith*, *Anderson*, *Davidson*, and *Krik*. Although there may be no known safe level of asbestos exposure, this does not support Dr. Hammar's leap to the conclusion that therefore every exposure Comardelle had to asbestos must have been a substantial contributing cause of his mesothelioma. The Court agrees that this "is not an acceptable approach for a causation expert to take." *Krik*, 2014 WL 7330901, at *4, and it is "precisely the kind of testimony the Supreme Court in *General Electric Co. v. Joiner* . . . observed as being nothing more than the 'ipse dixit of the expert.'" *Smith*, 2013 WL 214378, at *2 (quoting 522 U.S. 136, 146 (1997)). This kind of blanket specific causation opinion is not based on or tied to the specific facts and circumstances of any of Comardelle's exposures to asbestos and it elides any differences or nuances of duration, concentration, exposure, and the properties of the fibers to which he may have been exposed.[20] The Court is not persuaded that such a one-size-fits-all

---

[19] R. Doc. No. 447, at 2-3; R. Doc. Nos. 447-2 to -4, -6 to -8. Plaintiffs submit one transcript from a hearing on a motion regarding Dr. Hammar's testimony which also offers little analysis. R. Doc. No. 447-5, at 10 ("I'm going to allow it all to go in. Let the Fourth Circuit deal with it.").

[20] R. Doc. No. 407-5, at 19. Indeed, Dr. Hammar seems to acknowledge that the "every exposure" theory is an "absolute" approach at odds with "practical" concerns such as the nature of a particular exposure to asbestos:

> Q. Assume for me, if you would, that Mr. Comardelle testified that he drilled through some corrugated siding to run electrical conduit.
> A. Okay.
> Q. Assume for me that he testified he did that a dozen times.
> A. Okay.
> Q. Assume that he testified that it took five to ten seconds for him to do that. And I want you to further assume, because he didn't know the answer to this, but I

approach is reliable expert testimony.[21]

Plaintiffs, as the proponents of the testimony, have not established by a preponderance of the evidence that Dr. Hammar's specific causation opinions in this case are reliable. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 459 (5th Cir. 2002). Instead of explaining how Dr. Hammar can reliably opine that Benjamin Foster 81-27 was a cause of Comardelle's mesothelioma, plaintiffs refer cursorily to a broad array of cases, studies, and regulatory materials.[22] Suffice it to say, plaintiffs overstate or misstate the relevance of these sources.[23] None of those citations plug the impermissible gap in Dr. Hammar's reasoning from the general causation proposition that

---

want you to assume that each time he did that the corrugated siding contained asbestos.
A. Okay.
Q. Do you have those assumptions in mind?
A. Yeah.
Q. In your opinion if he spent a dozen times five to ten seconds each time drilling through corrugated siding, so we're talking somewhere between 60 seconds and 2 minutes of drilling, in your opinion was that activity alone a substantial factor in causing Mr. Comardelle's mesothelioma?
. . .
A. Well, if you just looked at it from a practical – practical, I would probably say no. If you wanted to be absolute to say that everything counts, you would say yes.
R. Doc. No. 407-5, at 19.

[21] If the "every exposure" theory was a reliable basis for specific causation opinions, an expert witness would merely need to change a plaintiff's name and work history and issue the same report in every case. The Court notes that at one point in his report, Dr. Hammar erroneously refers to Comardelle as "Mr. *Humphries*." R. Doc. No. 407-4, at 11 ¶ 34 (emphasis added). *Humphries v. OneBeacon American Insurance Co.*, No. 13-5426 (E.D. La. Aug. 13, 2013) is an unrelated asbestos case pending before this Court, in which Dr. Hammar has been retained to provide expert testimony.

[22] R. Doc. No. 447, at 3-15.

[23] For example, plaintiffs cite the Louisiana Fourth Circuit Court of Appeal's opinion in *Thibodeaux v. Asbestos Corp. Ltd.*, 976 So. 2d 859, 862 (La. App. 4 Cir. 2008), and attribute to that court the holding that "'any exposure to asbestos above background is a causative factor in producing the disease.'" R. Doc. No. 447, at 4 (quoting *Thibodeaux*). In fact, the language quoted by plaintiffs was the Fourth Circuit's quotation of a party's position—a position which the Fourth Circuit rejected. *See Thibodeaux*, 976 So. 2d at 863 ("However, contrary to what the Thibodeauxs allege, this Court, in *Torrejon* did not hold that the standard in an asbestos case was that 'any' exposure was sufficient to prove causation.").

exposure to asbestos increases the risk of mesothelioma, to the specific causation opinion that *in this case* Comardelle's exposure to Benjamin Foster 81-27 was a cause of his mesothelioma giving rise to liability. *See, e.g.*, *Anderson*, 950 F. Supp. 2d at 1225 (excluding testimony despite plaintiff's citation to "numerous scholarly articles and scientific studies" because those materials were not specific to "the type of exposure Mr. Anderson had to Defendants' products"). Accordingly, the Court concludes that Dr. Hammar's specific-causation opinions as to Benjamin Foster 81-27 (and all other exposures at issue in this case), are an unreliable product of the "every exposure theory" and must be excluded.[24]

**IT IS ORDERED** that Amchem's motion is **GRANTED**. At trial, Dr. Hammar may not offer specific causation testimony based on the "every exposure" theory that Comardelle's mesothelioma was caused by any particular exposure to a defendant's product or premises, including Benjamin Foster 81-27. Dr. Hammar may opine regarding Comardelle's diagnosis of mesothelioma and issues of general causation. To the extent that this order and reasons rejecting the "every exposure" theory as a basis for specific causation testimony implicates the admissibility of testimony by other expert witnesses, those issues will be addressed by separate order. No such testimony shall be elicited without a prior order of the Court and the parties shall edit Dr. Hammar's videotaped deposition to remove opinion testimony excluded by this Order and Reasons.

New Orleans, Louisiana, January 5, 2015.

LANCE M. AFRICK
**UNITED STATES DISTRICT JUDGE**

---

[24] The Court emphasizes that this holding is based on the unreliability of Dr. Hammar's methodology. The Court expresses no opinion as to whether any of his specific causation conclusions might in fact be correct, or whether another qualified witness may offer reliable specific causation opinions in this case.